**Eryn Karpinski Hoerster, OSB #106126**
E-Mail: eryn.hoerster@foster.com
FOSTER GARVEY PC
Eleventh Floor
121 SW Morrison Street
Portland, Oregon 97204-3141
Telephone: (503) 228-3939
Facsimile: (503) 226-0259

**Kristen C. Rodriguez,** *Pro Hac Vice*
E-Mail: kristen.rodriguez@dentons.com
DENTONS US LLP
1900 K Street, NW
Washington, DC 20006
Telephone: (202) 496-7188

*Attorneys for Defendant*
*The New York Times Company*

## UNITED STATES DISTRICT COURT

## DISTRICT OF OREGON

## PORTLAND DIVISION

THEA MACQUAID and SARAH RENFROW, on behalf of themselves and all others similarly situated,

              Plaintiffs,

    v.

THE NEW YORK TIMES COMPANY, d/b/a The New York Times,

              Defendant.

Case No. 3:22-cv-00955-MO

**DEFENDANT THE NEW YORK TIMES COMPANY'S REPLY MEMORANDUM OF LAW IN SUPPORT OF MOTIONS TO DISMISS AND STRIKE**

Pursuant to Fed. R. Civ. P. 12(b), (f)

ORAL ARGUMENT REQUESTED

DEFENDANT THE NEW YORK TIMES COMPANY'S REPLY MEMORANDUM OF LAW IN SUPPORT OF MOTIONS TO DISMISS AND STRIKE

# TABLE OF CONTENTS

PRELIMINARY STATEMENT ................................................................. 1

ARGUMENT ........................................................................................ 2

I.    PLAINTIFFS' UTPA CLAIMS ARE TIME-BARRED BECAUSE THE STATUTE
      OF LIMITATIONS RUNS BASED ON WHAT THEY SHOULD HAVE KNOWN...... 2

      A.    The Unlawful Charge Claim is Time-Barred.......................................... 3

      B.    The Disclosure Claims Are Time-Barred ............................................. 5

II.   PLAINTIFFS HAVE NOT ALLEGED AN ARL VIOLATION. ..................................... 7

      A.    Plaintiffs Still Have Not Alleged the Disclosures Presented to Them................... 7

      B.    No Jury Is Needed to Find that the Checkout Page's Disclosures Are Clear
            and Conspicuous as a Matter of Law. ................................................. 10

      C.    The ARL Requires a "Description" of a Publisher's Cancellation Policy –
            Not the Entire Policy................................................................... 12

      D.    Consumers "Affirmatively Consent" to Contractual Terms By Clicking a
            Button Designated to Indicate Agreement to Those Terms................................18

      E.    Plaintiffs Continue to Rely Solely on Conclusory Allegations Instead of
            Including the Acknowledgment Email That Was Sent to Them. ......................... 22

III.  PLAINTIFFS CANNOT SAVE THEIR UNJUST ENRICHMENT CLAIM ................ 23

IV.   PLAINTIFFS' NATIONWIDE CLASS ALLEGATIONS SHOULD BE STRICKEN .. 25

CONCLUSION.................................................................................... 27

# TABLE OF AUTHORITIES

**Page(s)**

**CASES**

*Acradyne Inc. v. Travelers Cas. & Sur. Co. of Am.*,
    263 F. App'x 594, 598 (9th Cir. 2008) ( ...............................................................24

*Ashcroft v. Iqbal*,
    556 U.S. 662 (2009).............................................................................................1, 8

*Bias v. Wells Fargo & Co.*,
    312 F.R.D. 528 (N.D. Cal. 2015)..........................................................................26

*Brooks v. BC Custom Constr., Inc.*,
    No. 3:18-cv-00717-YY, 2019 WL 3763769 (D. Or. May 21, 2019).......................5

*Cordova v. FedEx Ground Package Sys.*,
    104 F. Supp. 3d 1119 (D. Or. May 8, 2015).........................................................24

*Dearmey v. Hawaiian Isles Kona Coffee Co., LTD*,
    No. SACV 19-432, 2019 WL 6723413 (C.D. Cal. July 22, 2019).........................25

*Dohrmann v. Intuit, Inc.*,
    823 F. App'x 482, 484 (9th Cir. 2020) ( ...............................................................19

*Ekin v. Amazon Servs.*,
    LLC, 84 F. Supp. 3d 1172 (W.D. Wash. 2014) .....................................................20

*Env't Health Advocates, Inc. v. Sream, Inc.*,
    83 Cal. App. 5th 721 (1st Dist. 2022) ..................................................................21

*Gaston v. Parsons*,
    318 Or. 247, 864 P.2d 1319 (1994) .......................................................................3

*Gershfeld v. Teamviewer US, Inc.*,
    No. 21-cv-00058, 2021 WL 3046775 (C.D. Cal. 2021) ........................................19

*Gilberg v. Cal. Check Cashing Stores, LLC*,
    913 F.3d 1169 (9th Cir. 2019) ..............................................................................10

*Graham v. DaimlerChrysler Corp.*,
    34 Cal. App. 4th 553 (Cal. 2004), *as modified* (Jan. 12, 2005) ...............................20

*Hall v. Time, Inc.*,
    857 F. App'x 385, 386 (9th Cir. 2021)............................................................12, 17

*Hall v. Time, Inc.*,
  No. 19-cv-01153, 2020 WL 2303088 (C.D. Cal. Mar. 13, 2020)....................................17, 19

*Johnson v. Pluralsight, LLC*,
  728 F. App'x 674 (9th Cir. 2018) ...................................................................................17, 18

*Kissel v. Code 42 Software, Inc.*,
  No. 15-cv-1936, 2016 WL 7647691 (C.D. Cal. Apr. 14, 2016) ................................................9

*Lopez v. Stages of Beauty, LLC*,
  307 F. Supp. 3d 1058 (S.D. Cal. 2018)................................................................16, 17, 18, 22

*Lopez v. Terra's Kitchen, LLC*,
  331 F. Supp. 3d 1092, 1100 (S.D. Cal. 2018)......................................................................20

*Lundbom v. Schwan's Home Service*,
  No. 3:18-cv-02187, 2020 WL 2736419 (D. Or. May 26, 2020)............................................21

*Mattson v. New Penn Fin., LLC*,
  No. 3:18-cv-00990, 2018 WL 6735088 (D. Or. Nov. 6, 2018), *report and rec.*
  *adopted*, 2019 WL 123870 (D. Or. Jan. 4, 2019) ...................................................................25

*Maynez v. Walmart, Inc.*,
  479 F. Supp. 3d 890 (C.D. Cal. 2020) ....................................................................................19

*Mazza v. Am. Honda Motor Co., Inc.*,
  666 F.3d 581 (9th Cir. 2012) ...........................................................................................25, 26

*McKee v. Audible, Inc.*,
  No. 17-cv-1941, 2018 WL 11263238 (C.D. Cal. Mar. 12, 2018).........................................8, 9

*Moses v. The New York Times, Co.*,
  No. 1:20-cv-04658-RA (S.D.N.Y.).......................................................................................7, 23

*Nguyen v. Barnes & Noble Inc.*,
  763 F.3d 1171 (9th Cir. 2014) ............................................................................................6, 20

*Nietzche v. Freedom Home Mortg. Corp.*,
  No. 3:18-cv-1930, 2019 WL 5057174 (D. Or. Oct. 8, 2019) ...................................................8

*Ott v. Mortg. Invs. Corp. of Ohio*,
  65 F. Supp. 3d 1046 (D. Or. 2014) .........................................................................................25

*Padrick v. Lyons*,
  277 Or. App. 455, 372 P.3d 528 (2016)................................................................................3, 4

DEFENDANT THE NEW YORK TIMES COMPANY'S REPLY MEMORANDUM OF LAW IN
SUPPORT OF MOTIONS TO DISMISS AND STRIKE

FG: 100746287.2

*Pincetich v. Jeanfreau*,
    699 F. Supp. 1469 (D. Or. 1988) ........................................................................8

*Price v. Synapse Group, Inc.*,
    No. 16-cv-01524, 2017 WL 3131700 (S.D. Cal. July 24, 2017) ................................9

*Rutter v. Apple Inc.*,
    No. 21-cv-04077, 2022 WL 1443336 (N.D. Cal. May 6, 2022)......................................22, 23

*Scharfstein v. BP W. Coast Prod., LLC*,
    292 Or. App. 69, 423 P.3d 757 (2018)......................................................................6

*In re Seagate Tech. LLC Litig.*,
    No. 16-cv-00523, 2017 WL 3670779 (N.D. Cal. Aug. 25, 2017) ..........................26

*Sellers v. JustAnswer LLC*,
    73 Cal. App. 5th 444 (4th Dist., 2021)................................................................6, 22

*Soliman v. Subway Franchisee Adver. Fund Trust Ltd.*,
    442 F. Supp. 3d 519 (D. Conn. 2020) ....................................................................19

*In re Trilegiant Corp.*,
    11 F. Supp. 3d 82 (D. Conn. 2014)........................................................................5

*Turnier v. Bed Bath & Beyond Inc.*,
    517 F. Supp. 3d 1132 (S.D. Cal. 2021)...........................................................14, 21

*Unigestion Holdings, S.A. v. UPM Tech., Inc.*,
    580 F. Supp. 3d 932 (D. Or. 2022) ........................................................................24

*Walker v. Fred Meyer, Inc.*,
    No. 3:17-cv-01791, 2021 WL 4239988 (D. Or. Aug 13, 2021) ............................10

*Walters v. Vitamin Shoppe Indus.*,
    No. 3:14-cv-1173, 2018 WL 2424132 (D. Or. May 8, 2018), *report and rec.*
    *adopted*, 2018 WL 2418544 (D. Or. May 29, 2018) ........................................25, 27

*Whitaker v. Tesla Motors, Inc.*,
    985 F.3d 1173 (9th Cir. 2021) ................................................................................7

*Wiseley v. Amazon.com, Inc.*,
    709 F. App'x 862 (9th Cir. 2017) ..........................................................................19

*In re ZF-TRW Airbag Control Units Prods. Liab. Litig.*,
    No. LAML1902905JAKFFMX, 2022 WL 522484 (C.D. Cal. Feb. 9, 2022) .........23

DEFENDANT THE NEW YORK TIMES COMPANY'S REPLY MEMORANDUM OF LAW IN
SUPPORT OF MOTIONS TO DISMISS AND STRIKE

FG: 100746287.2

## STATUTES

Fair Credit Reporting Act ................................................................................................10

Oregon's Automatic Renewal Law ("ARL") ....................................................... *passim*

ORS 646A.293(2) ...........................................................................................................10

ORS 646A.293(5) ...........................................................................................................18

ORS 646A.295(1)(a) ..........................................................................................10, 16, 17

ORS 646A.295(1)(b) ...................................................................................................4, 5

ORS 646A.295(1)(c) .......................................................................................................18

Truth in Lending Act .......................................................................................................10

Unlawful Trade Practices Act .................................................................................2, 3, 27

## OTHER AUTHORITIES

Fed. R. Civ. P. 8 ...............................................................................................................8

Fed. R. Civ. P. 9(b) ................................................................................................ *passim*

DEFENDANT THE NEW YORK TIMES COMPANY'S REPLY MEMORANDUM OF LAW IN
SUPPORT OF MOTIONS TO DISMISS AND STRIKE

FG: 100746287.2

## PRELIMINARY STATEMENT

Plaintiffs' Opposition Brief (Dkt. 22) does nothing to cure their failure to provide the most basic factual allegations to support their claims, including what disclosures they saw when they subscribed to The New York Times and what disclosures were provided to them in the follow-up emails that they allegedly received.  Rather than using their Opposition to provide clarity about these pleading deficiencies, Plaintiffs rely on a series of disjointed allegations:  the "exemplar" disclosures in the Amended Complaint were provided to certain Times subscribers, Plaintiffs subscribed to The Times, and both the exemplars and the disclosures violated Oregon's Automatic Renewal Law ("ARL") in the same way.  But this last allegation is merely a legal conclusion that need not be accepted as true—and without it, there is no connection between the sample screenshots in the Amended Complaint and whatever disclosures were actually shown to these Plaintiffs.

Plaintiffs' failure to allege the disclosures presented to them, including in emails that they claim to have allege received, deprives The Times and this Court of the ability to analyze whether those disclosures comply with the ARL or not.  Thus, Plaintiffs fail to state a claim under *Iqbal* and *Twombly*, and certainly fail to satisfy Rule 9(b)'s particularly requirement (which they concede applies here).

Moreover, even if the disclosures in the "exemplar" Checkout Page governed the analysis of this Motion, Plaintiffs' claims would still fail both because they are time-barred and on their merits.[1]  With respect to the statute of limitations, the Opposition improperly relies on Plaintiffs'

---

[1]  The abbreviations used herein have the same meaning ascribed to them in the Opening Brief ("Opening Br.") (Dkt. 17).

DEFENDANT THE NEW YORK TIMES COMPANY'S REPLY MEMORANDUM OF LAW IN SUPPORT OF MOTIONS TO DISMISS AND STRIKE

Page 1

subjective feelings about when their claims accrued rather than applying the objective standard required by law.  And Plaintiffs' substantive arguments about the sufficiency of The Times's ARL disclosures, their purported lack of "affirmative consent," and unjust enrichment are largely based on mischaracterizations of the applicable case law and their own allegations.

Finally, Plaintiffs oppose The Times's motion to strike their nationwide class allegations on the sole basis that the motion is "premature" prior to discovery, but do not identify a single fact that would undermine the analysis set forth in the Opening Brief or the well-reasoned cases striking precisely these type of nationwide unjust enrichment claims.

## ARGUMENT

### I.    PLAINTIFFS' UTPA CLAIMS ARE TIME-BARRED BECAUSE THE STATUTE OF LIMITATIONS RUNS BASED ON WHAT THEY SHOULD HAVE KNOWN.

Plaintiffs do not dispute that the statute of limitations for their Unlawful Trade Practices Act ("UTPA") claim is one year, nor do they dispute that they purchased their subscriptions—and were charged for them—more than a year before they filed the initial complaint in this action. Further, they do not seriously contest that if they had made an inquiry, any purported ARL violations would have become clear.  Opp. at 14-15.

Instead, Plaintiffs argue that for each purported ARL violation, they lacked sufficient notice to trigger an inquiry.  But assuming that each Plaintiff saw the Checkout Page or something resembling it, as the Opposition Brief intimates,[2] they had all the notice they required to engage in the minimal amount of diligence that it would take to "discover" that—contrary to their alleged intent—they were enrolled in an automatic renewal plan.  Specifically, the Checkout Page would

---

[2] Because Plaintiffs fail to plead what disclosures they actually saw when they allegedly purchased their subscriptions, in violation of Rule 9(b), these arguments are necessarily hypothetical based on the screenshots that were included in the Amended Complaint.

DEFENDANT THE NEW YORK TIMES COMPANY'S REPLY MEMORANDUM OF LAW IN SUPPORT OF MOTIONS TO DISMISS AND STRIKE

have shown them "**AUTOMATIC RENEWAL TERMS**," which among other things describe the applicable cancellation policy and state that they will be "automatically charged" a fee for a set period of time, that fee would then increase on a particular date, and their "subscription will continue until you cancel."  FAC ¶ 40.  The Amended Complaint also alleges that The Times immediately charged both Plaintiffs for their subscriptions (MacQuaid in August 2020, and Renfrow in December 2020).  *Id.* ¶¶ 8-9.

These undisputed facts are, at a minimum, sufficient to notify Plaintiffs that they had entered into an agreement for an allegedly unwanted subscription plan, regardless of whether they characterize their ARL claim as based on "deficient disclosures" or "unlawful charges."  Opp. at 9-11.  Plaintiffs bring a single claim based on ARL violations, so the distinction between these two theories of liability is irrelevant.  *See Padrick v. Lyons*, 277 Or. App. 455, 468, 372 P.3d 528, 537 (2016) ("[T]o trigger the running of the statute of limitations, it is not necessary that a plaintiff be aware of every potential breach of duty"; instead, a "claim accrues when the plaintiff knew or reasonably should have known of 'legally cognizable harm.'" (citation omitted)); *see also Gaston v. Parsons*, 318 Or. 247, 255 n.8, 864 P.2d 1319, 1323 n.8 (1994) (noting that the statute of limitations may begin to run even if a plaintiff has not "identif[ied] a particular theory of recovery").  As alleged in the Amended Complaint, the "harm" that Plaintiffs incurred is every payment they made to The Times—including the first one—which according to them was the result of The Times "induc[ing them] to sign up for" a subscription they had not consented to. FAC ¶¶ 53, 55-56, 60.  But even if it were necessary to cleave Plaintiffs' single UTPA claim into distinct parts related to "charges" and "disclosures," Plaintiffs' arguments would still fail, as shown below.

### A.    <u>The Unlawful Charge Claim is Time-Barred</u>

DEFENDANT THE NEW YORK TIMES COMPANY'S REPLY MEMORANDUM OF LAW IN SUPPORT OF MOTIONS TO DISMISS AND STRIKE

Plaintiffs argue that their "unlawful charge" claims under ORS 646A.295(1)(b) are triggered not by their initial charges, or even—in the case of Renfrow—her first renewal charge, but instead by the moment at which they subjectively were "surprised" and "upset" by particular charges. Opp. at 9-11 & n.1. Specifically, Plaintiffs argue, conveniently, that "Plaintiffs did not suspect that there was any deficiency with Defendant's disclosures until they incurred unexpected automatic renewal charges on July 31, 2021 (for Plaintiff MacQuaid) and in November 2021 (for Plaintiff Renfrow)." Opp. at 12.

Plaintiffs' argument for when their ARL claims accrued makes no sense given their own allegations. Plaintiffs ask this Court to assume that they both saw the same "example" disclosures in the Amended Complaint, yet insist that MacQuaid read those disclosures to understand her subscription would terminate after a year and Renfrow read them to mean that her subscription would continue renewing indefinitely, albeit at her introductory rate. In other words, Plaintiffs argue that MacQuaid saw the Checkout Page and assumed that she would be charged ***once and never again***, yet paradoxically Renfrow saw the same Checkout Page and assumed that she would be ***charged every month*** but only at the same $1 rate.

In any event, Plaintiffs' subjective views are irrelevant. The test for when the statute of limitations is triggered is not one of subjective belief, but instead when Plaintiffs "should have known" of the facts that giving rise to their claim. *See Padrick*, 277 Or. App. at 466 ("For purposes of determining what facts a plaintiff knows or should have known, '[t]he discovery rule applies an objective standard—how a reasonable person of ordinary prudence would have acted in the same or a similar situation.'") (citation omitted). A plaintiff cannot prevent triggering the limitations period by avoiding information that is clearly presented to her; instead, she "has a duty to act diligently to discover the relevant facts." *Id.*

DEFENDANT THE NEW YORK TIMES COMPANY'S REPLY MEMORANDUM OF LAW IN SUPPORT OF MOTIONS TO DISMISS AND STRIKE

Page 4

Thus, at a minimum, Renfrow's claim is time-barred because she began incurring renewal fees that she claims were unauthorized more than a year before she filed the initial complaint. There can be no doubt that the ARL "unlawful charge" provision covers any unauthorized charge for an "automatic renewal," without regard to whether a price increase occurred before the charge was made.  ORS 646A.295(1)(b).  But the Plaintiffs allege more in the Amended Complaint, by seeking *all* fees they incurred in connection with their subscriptions, FAC ¶¶ 55-56, 60, not merely—as they assert in the Opposition—MacQuaid's renewal fee and any renewal fees that Renfrow incurred after her first year as a Times subscriber.  Opp. at 10.

### B.    The Disclosure Claims Are Time-Barred

Plaintiffs argue that the statute of limitations for their disclosure claims were not triggered until "Plaintiffs' *discovery* that Defendant's disclosures on the Checkout Page and the Acknowledgment Email were deficient."[3]  Opp. at 12.  But again, the test is not just about what Plaintiffs claim to have known, but what they ***should have known***.  *Brooks v. BC Custom Constr., Inc.,* No. 3:18-cv-00717, 2019 WL 3763769, *19 (D. Or. May 21, 2019); *see In re Trilegiant Corp.,* 11 F. Supp. 3d 82, 107 (D. Conn. 2014).  Plaintiffs' self-serving allegations regarding what they supposedly believed are irrelevant.

What Plaintiffs should have known, assuming they saw the Checkout Page, is that they had entered into an automatic renewal plan that would continue until they cancelled, and that the price would increase after a year.  FAC ¶ 40.  Plaintiffs make no attempt to address the case law cited in The Times's Opening Brief, which holds that a plaintiff is put on inquiry notice when their

---

[3] Confusingly, Plaintiffs argue that they allege ARL violations based on both unlawful charges and unlawful disclosures, but then assert that the disclosure claims do not count because "this action is, at its core, an 'illegal charge' case."  Opp. at 13.

DEFENDANT THE NEW YORK TIMES COMPANY'S REPLY MEMORANDUM OF LAW IN SUPPORT OF MOTIONS TO DISMISS AND STRIKE

contractual obligations are presented to them.   Opening Br. at 15 (citing *Brooks*, 2019 WL 3763769, at *19).

Plaintiffs devote a page to discussing *Scharfstein v. BP W. Coast Prod.*, LLC, 292 Or. App. 69, 89, 423 P.3d 757, 768 (2018), even though, as noted in The Times's Opening Brief, the court determined that the statutory period began running from the moment the defendants failed to make the required disclosures.   Opening Br. at 18.   In that case, the plaintiffs also incurred a charge at the time of the allegedly deficient disclosures—exactly as Plaintiffs did here.   Yet Plaintiffs argue that only ***certain*** charges count for statute of limitations purposes, and conveniently, those charges just happen to be the ones that occured within the statutory period.   But Plaintiffs do not get to pick and choose when the statute of limitation begins to run when the information presented to them at the time of sale put them on notice that they had signed up for automatically renewing subscriptions.

Finally, Plaintiffs argue that they cannot have been put on "inquiry notice" by hyperlinks on the Checkout Page because they allege those links were not "sufficiently conspicuous" and that they failed to affirmatively consent to them.   Opp. at 15-16.   These are legal conclusions that need not be accepted as true.   To the contrary, the conspicuousness of the links is a legal question that this Court can resolve in The Times's favor simply by looking at the Checkout Page.   *See* p. 11, *infra*.   And, as explained more fully below, Plaintiffs' argument that they did not "affirmatively consent" to these terms is squarely foreclosed by the applicable case law.[4]   *See* pp. 18-22, *infra*.

---

[4] Plaintiffs cite *Sellers v. JustAnswer LLC*, 73 Cal. App. 5th 444, 469-70, 480 (4th Dist., 2021) and *Nguyen v. Barnes & Noble Inc.*, 763 F.3d 1171, 1176 (9th Cir. 2014), but neither support Plaintiffs' argument.   In *Sellers*, the court recognized that sign-in wrap agreements could indicate affirmative consent and were more likely to do so where—as here—a consumer signs up for an "ongoing account" and thus reasonably "contemplates entering into a continuing, forward-looking

## II.    PLAINTIFFS HAVE NOT ALLEGED AN ARL VIOLATION.

### A.    Plaintiffs Still Have Not Alleged the Disclosures Presented to Them.

Despite two attempts to do so, Plaintiffs still refuse to say what they actually saw during the checkout process and in the follow-up email they allegedly received from The Times.  Instead, they fall back on conclusory allegations that whatever was presented was "deficient."  Such allegations cannot survive a motion to dismiss.

Plaintiffs argue that they have adequately pled the disclosures they viewed because they alleged that "the appearance and disclosures of the Checkout Page shown at Paragraph 40, has remained 'substantially the same' at all relevant times herein."  Opp. at 17 (quoting FAC ¶ 39).  To the contrary, Paragraph 39 says nothing about the appearance of the Checkout Page remaining "substantially the same" over time, nor could Plaintiffs reasonably make that allegation given the differences between the version of the Checkout Page used in the *Moses* Complaint and the June 2022 "exemplar" in the FAC.  *Compare* FAC ¶ 40 *with Moses v. The New York Times, Co.,* No. 1:20-cv-04658-RA (S.D.N.Y.), Dkt. 1 (complaint) ¶ 31.  Instead, the full sentence that Plaintiffs truncate says, "The enrollment process for the NYT Subscriptions is substantially the same, regardless of the medium used."  FAC ¶ 39.  But the fact that the "medium used" allegedly does not vary the "enrollment process" cannot create a reasonable inference that the Plaintiffs saw the same disclosures in the FAC's exemplars—and it certainly cannot satisfy the pleading requirement of Rule 9(b), which Plaintiffs do not dispute applies here.  *See* Opening Br. at 12-14, 21.

---

relationship."  *Sellers*, 73 Cal. App. 5th at 471.  And *Nguyen* involved the type of "browsewrap" notification that is not at issue here.  *See* p. 20, *infra*.

DEFENDANT THE NEW YORK TIMES COMPANY'S REPLY MEMORANDUM OF LAW IN SUPPORT OF MOTIONS TO DISMISS AND STRIKE

FG: 100746287.2

Plaintiffs also argue that the fact that they allege the "same ARL violations" occurred in the disclosures made to Plaintiffs and the "exemplar" is enough to survive the pleading stage. Opp. at 17. But the mere allegation of a statutory violation is a conclusory allegation that need not be credited at the pleading stage. *See Whitaker v. Tesla Motors, Inc.*, 985 F.3d 1173, 1176-77 (9th Cir. 2021) (affirming dismissal of a complaint involving "legal conclusions premised upon descriptions of parallel conduct"). The other paragraphs Plaintiffs cite to support their arguments about the "same deficiencies" and Plaintiffs' claims being "materially the same as" the rest of the putative class are equally conclusory. Opp. at 17. Mere allegations of wrongdoing cannot survive a motion to dismiss under Rule 8, *see Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) – and they certainly do not pass muster under Rule 9(b). *See Nietzche v. Freedom Home Mortg. Corp.*, No. 3:18-cv-1930, 2019 WL 5057174, at *12 (D. Or. Oct. 8, 2019) (dismissing misrepresentation and failure-to-disclose claims under Rule 9(b) that merely alleged certain information was not disclosed to plaintiffs).[5] The reason for this is obvious: if a plaintiff could merely allege that a disclosure was legally deficient without adequately presenting it or otherwise describing it, the Court would be deprived of its ability to analyze the disclosure to determine whether it satisfies the statutory requirements as a matter of law.

In seeking support for their inadequate pleading, Plaintiffs rely on two cases in which, unlike here, the plaintiffs alleged the specific terms disclosed to them. In *McKee v. Audible, Inc.*, No. 17-cv-1941, 2018 WL 11263238 (C.D. Cal. Mar. 12, 2018), for example, the plaintiffs alleged

---

[5] Plaintiffs make no attempt to distinguish the Rule 9(b) cases cited in the Opening Brief, including *Pincetich v. Jeanfreau*, 699 F. Supp. 1469 (D. Or. 1988), which show why allegations that disclosures were legally deficient are insufficient to satisfy the rule's "particularity" standard. Opening Br. at 21.

DEFENDANT THE NEW YORK TIMES COMPANY'S REPLY MEMORANDUM OF LAW IN SUPPORT OF MOTIONS TO DISMISS AND STRIKE

Page 8

precisely what they saw, and what they did not see, during the sign-up process. *Id.* at *3 ("During

the Audible sign-up process, [plaintiff] McKee saw that: (1) 'one credit equals one audiobook;'

(2) 'consumers will 'get 1 book each month;'' and (3) 'credits 'do not expire'' . . . He did not see

any information related to the credit card apart from two disclosures: (1) that Audible cost[s]

$14.95 per month and (2) that he could cancel anytime."); (noting that the other named plaintiffs

"view[e]d the same Audible[] advertisements that McKee did"). *Id.* The Plaintiffs in *Price v.*

*Synapse* likewise allege the disclosures made to the plaintiffs. *See Price v. Synapse Group, Inc.*,

No. 16-cv-01524, 2017 WL 3131700, at *1 (S.D. Cal. July 24, 2017) ("Plaintiffs allege that …

Defendants **presented them** with an online 'reward' offer'" in which "the terms of the automatic

renewal offer are contained in the middle of a ten-sentence paragraph located at the end of the

order page" and noting that the complaint attached this order page) (emphasis added).[6]

   In contrast, here Plaintiffs allege only what they believe to be legally deficient about The

Times's disclosures, not what those disclosures actually said to them. Indeed, Plaintiffs' individual

allegations are pled entirely in the negative. *See, e.g.*, FAC ¶ 8 ("Defendant did not disclose to

Ms. MacQuaid all required automatic renewal offer terms"; "MacQuaid was not placed on notice

of several material terms" such as "the recurring price to be charged upon renewal, the length of

the renewal term or when the first charge would occur, or the complete cancellation policy

associated with her NYT Subscription"); *id.* ¶ 9 ("Defendant did not disclose to Ms. Renfrow all

required automatic renewal offer terms associated with the subscription program"; "Ms. Renfrow

---

[6] The remaining case cited by Plaintiffs, *Kissel v. Code 42 Software, Inc.*, No. 15-cv-1936, 2016 WL 7647691 (C.D. Cal. Apr. 14, 2016), simply has nothing to say on this issue because the defendants did not move to dismiss based on plaintiff's failure to allege the disclosures made to her. Instead, the defendants challenged only the applicability of California law, the lack of a private right of action under the ARL, and the plaintiffs' failure to show standing. *Id.* at *2.

DEFENDANT THE NEW YORK TIMES COMPANY'S REPLY MEMORANDUM OF LAW IN
SUPPORT OF MOTIONS TO DISMISS AND STRIKE

was not placed on notice of several material terms associated with her NYT Subscription"). This type of conclusory pleading requires dismissal of the Amended Complaint.

**B.      No Jury Is Needed to Find that the Checkout Page's Disclosures Are Clear and Conspicuous as a Matter of Law.**

Without citation, Plaintiffs claim that the relevant question for Oregon's ARL statute is "whether a *reasonable consumer* would be misled by the substance or form of Defendant's disclosures." Opp. at 18. But for the purposes of this Motion, the actual question is the one found in the statute itself: whether a defendant's ARL disclosures are "clear and conspicuous." ORS 646A.295(1)(a). The Ninth Circuit and courts in this district have uniformly treated the question of whether a disclosure is "clear and conspicuous" as a question of law. *See Gilberg v. Cal. Check Cashing Stores, LLC*, 913 F.3d 1169, 1177 (9th Cir. 2019) (noting that whether a disclosure is "clear and conspicuous" is treated as a question of law under the Truth in Lending Act and "assuming" that "clarity and conspicuousness under [the Fair Credit Reporting Act ("FCRA")] present questions of law rather than fact"); *Walker v. Fred Meyer, Inc.*, No. 3:17-cv-01791, 2021 WL 4239988, at *2 (D. Or. Aug 13, 2021) ("[I]t is equally within this court's purview to determine whether, as a matter of law, Fred Meyer's disclosure was 'clear and conspicuous' under the FCRA.").

Moreover, Plaintiffs completely ignore the statutory definition of "clear and conspicuous"—"in larger type than the surrounding text, or in contrasting type, font or color to the surrounding text of the same size, or set off from the surrounding text of the same size by symbols or other marks, in a manner that clearly calls attention to the language," ORS 646A.293(2)—presumably because it is so obviously satisfied here.

Plaintiffs' argument to the contrary is frivolous.  For reference, here again is the Checkout Page used in the FAC:



FAC ¶ 40.  The Automatic Renewal terms are clearly presented "in contrasting type" (i.e., they are bolded), and they are "set off from the surrounding text" by a shaded gray box and a prominent, all-caps header.  These terms are "clear and conspicuous" as a matter of law.

Plaintiffs also argue that the Automatic Renewal Terms are not in "visual proximity" to the request for consent to them because they do not "appear in the block of text immediately above the 'Purchase Subscription' button."  Opp. at 18-19.  A cursory glance at the Checkout Page shows just how absurd this argument is, given that the only sentence separating the Automatic Renewal Terms and the "Purchase Subscription" button *seeks consent to the Automatic Renewal Terms*.

DEFENDANT THE NEW YORK TIMES COMPANY'S REPLY MEMORANDUM OF LAW IN SUPPORT OF MOTIONS TO DISMISS AND STRIKE

FG: 100746287.2

And in any event, Plaintiffs' interpretation of "visual proximity" to mean "immediately adjacent" was squarely rejected in *Hall v. Time, Inc.*, 857 F. App'x 385, 386 (9th Cir. 2021).[7]

### C.  The ARL Requires a "Description" of a Publisher's Cancellation Policy – Not the Entire Policy.

Contrary to Plaintiffs' assertions (Opp. at 19, 24), Oregon's ARL does not require The Times to present its ***entire*** Cancellation Policy on the Checkout Page.  And for good reason, as shown by Plaintiffs' page-long recitation of what they claim must appear on the Checkout Page.  Opp. at 20.  If that large body of text was presented on the Checkout Page, it would completely overwhelm all other disclosures and undermine the purpose of Oregon's ARL:  to present "clear and conspicuous" information so it is easy for consumers to understand what they are buying.

Putting aside Plaintiffs' invented requirements, all that the ARL requires is a "description of the cancellation policy that applies to the offer." ORS § 646A.293(5)(b).  That is precisely what is provided on the Checkout Page.  FAC ¶ 40.  Nonetheless, Plaintiffs point to three supposed flaws with The Times's cancellation disclosures:  (i) they failed to alert all users about the existence of certain promotions that do not permit cancellations, (ii) they failed to describe The Times's refund policy, and (iii) they used hyperlinks to link to the full Cancellation Policy and information about how to cancel rather than providing all such information directly on the Checkout Page.[8] Opp. at 20-24.  Each of these arguments fail.

---

[7] Plaintiffs also argue, citing a non-ARL case that invokes various California fraud-based claims, that this Court should not determine at the pleading stage that The Times's disclosures "would not deceive a reasonable consumer."  Opp. at 19 (citing *Hall v. Marriott Int'l*, No. 19-cv-1715, 2020 WL 4727069 (S.D. Cal. Aug. 14, 2020)).  But that question is not at issue in this case.  where, the relevant question is whether Plaintiffs have failed to allege an underlying ARL violation.

[8] By failing to respond to The Times's arguments on these issues, Plaintiffs concede that The Times properly disclosed "the length of the automatic renewal term" and the "amount to be charged."  Opening Br. at 25.

Plaintiffs seem to deliberately misunderstand the portion of the Cancellation Policy that states "certain promotions" do not permit cancellation during the promotional period. As set forth in the Opening Brief, if a person were to purchase a subscription through such a promotion, that term would be made clear at the time of purchase. Opening Br. at 23, 24 n. 11(quoting Chesley Decl. (Dkt. 15), Exs. B, C §1.7; *id.* §2.2). Yet Plaintiffs inexplicably argue that this clause "definitely applied" to Renfrow and "was set in stone at the time of her enrollment." Opp. at 21. But if Renfrow did in fact purchase a subscription that barred cancellation during her promotional period, she has not alleged that in the Amended Complaint (and the terms presented to her upon checkout would have materially differed from the "exemplar" on which she relies).

Plaintiffs argue that The Times failed to provide "a 'clear' or complete statement" of its refund policy. Opp. at 21. This is simply another requirement invented by Plaintiffs, as the ARL does not require the disclosure of any "refund policy." Nor is a "refund" part of "the consequences of cancellation," as Plaintiffs suggest. *Id.* To the contrary, since the Checkout Page's Automatic Renewal Terms explain that cancellations take effect at the end of a current billing period (FAC ¶ 40), there are no "partial billing periods" to refund. Opp. at 21.

Plaintiffs also assert that the Checkout Page does not adequately explain "how and when to cancel," even though, again, the ARL does not require this level of detail in the Automatic Renewal Terms. In this regard, Plaintiffs first argue that The Times's disclosures are insufficient because its telephonic customer service center is not open 24 hours a day and they didn't know about the chat function—which *is* open 24 hours per day. Opp. at 22. But they do not dispute that the Checkout Page's blue bolded hyperlink to the phrase "contacting Customer Care" led them to a webpage entitled "Cancel Your Subscription," of which this Court has already taken judicial notice. Chesley Decl., Ex. A. That page clearly sets forth both the extensive hours for telephone

service and how to use The Times's 24/7 chat function. *Id.* Thus, if Plaintiffs were truly "unaware" of how to cancel, only their lack of curiosity is to blame—not The Times's disclosures—and in any event none of this has any bearing on whether the Checkout Page contained "a description of the cancellation policy that applies to the offer."[9] ORS 646A.293(5)(b). The screenshot of the Checkout Page presented in the FAC shows that it did.

Plaintiffs next argue that information available through hyperlinks is irrelevant to whether The Times disclosed the appropriate Automatic Renewal Terms. Opp. at 22-24. To be clear, the Automatic Renewal Terms themselves, including the "description" of The Times's Cancellation Policy, are available directly on the Checkout Page above the "Purchase Subscription" button—not "buried in the Terms of Sale webpage." Opp. at 22. What is available through hyperlinks is the full Cancellation Policy, along with detailed instructions on how to cancel. *See* Chesley Decl., Exs. A-C. None of these items contain Automatic Renewal Terms to which the ARL's "visual proximity" requirement applies. In other words, The Times presents each of the required Automatic Renewal Terms in a simple and easy-to-understand manner and uses hyperlinks to give users an opportunity to learn more details before they subscribe.

A comparison of the Checkout Page to the webpages in the cases Plaintiffs cite is instructive. In *Turnier v. Bed Bath & Beyond Inc.*, 517 F. Supp. 3d 1132 (S.D. Cal. 2021), the disclosures for the defendant's "BEYOND+" automatic renewal program were presented on the following two checkout screens:

---

[9] Also irrelevant is Plaintiffs' allegation that The Times's "chat facility is unavailable due to excessive chat from customers" (Opp. at 22), given that Plaintiffs allege they did not even attempt to use the chat function and were in fact entirely unaware of it. *Id.*

DEFENDANT THE NEW YORK TIMES COMPANY'S REPLY MEMORANDUM OF LAW IN SUPPORT OF MOTIONS TO DISMISS AND STRIKE



Complaint, *Turnier v. Bed Bath & Beyond Inc.*, No. 3:20-cv-00288 (S.D. Cal.), Dkt. 1, Ex. A,

¶¶ 16-17.  While there was a link to the phrase "terms and conditions," the BEYOND+ subscription

flow does not even mention cancellation, let alone provide a "description of the cancellation

policy" as required.  *See* ORS 646A.295(1)(a), 646A.293(5)(b).

In *Lopez v. Stages of Beauty, LLC*, 307 F. Supp. 3d 1058 (S.D. Cal. 2018), the checkout

page was similarly deficient on its face:



Complaint, *Lopez v. Stages of Beauty, LLC*, No. 3:17-cv-01888 (S.D. Cal.), Dkt. 1 ¶ 18.  Although

this page mentioned cancellation by including the phrase "To cancel, simply call 1-855-295-7325,"

it did not do so in a "clear and conspicuous" manner as defined by the statute because the phrase is not distinguished in any way from the text around it. It also provided only a method of cancellation, rather than a "description of the cancellation policy" as required. *Lopez*, 307 F. Supp. 3d at 1072.

In contrast to the webpages above, The Times's Checkout Page includes a three-sentence description of its cancellation policy, in bold, inside a shaded box under the heading "**AUTOMATIC RENEWAL TERMS**." This is plainly sufficient to satisfy the ARL's requirement that The Times disclose a "description of the cancellation policy that applies to the offer." ORS 646A.295(1)(a), 646A.293(5)(b); *see Hall v. Time, Inc.*, No. 19-cv-01153, 2020 WL 2303088, at *4 (C.D. Cal. Mar. 13, 2020).[10]

Finally, Plaintiffs rely heavily on *Johnson v. Pluralsight, LLC*, 728 F. App'x 674 (9th Cir. 2018), to argue that "[t]he description of the cancellation policy" in the initial Automatic Renewal Terms must also explain "how to cancel." ORS 646A.295(1)(a), 646A.293(5)(b). The case provides no support for this proposition because *Johnson* involved a free trial that converted into a paying subscription after 10 days, *id.* at 677, triggering the following ARL provision (which is identical in both the California and Oregon ARL statutes): "If the offer includes a free trial, the person shall also disclose in the acknowledgment how to cancel and allow the consumer to cancel

---

[10] Plaintiffs attempt to distinguish *Hall v. Time* by claiming that its only "relevant holding" involved post-purchase disclosures and the court "did not consider the sufficiency of the defendant's pre-purchase cancellation policy disclosures." Opp. at 24, n.9. This is false. In the district court's lengthy analysis of each of the plaintiff's claimed ARL violations, the court rejected plaintiff's argument that disclosures in the checkout page—including the "description of the cancellation policy that applies to the offer"—"were insufficiently precise." *Hall*, 2020 WL 2303088, at *4. In connection with that ruling, the court explained that that the cancellation policy was adequately disclosed because the checkout page "provided information about how and when she could cancel, with hyperlinks to the relevant contact information." *Id.*

DEFENDANT THE NEW YORK TIMES COMPANY'S REPLY MEMORANDUM OF LAW IN SUPPORT OF MOTIONS TO DISMISS AND STRIKE

before the consumer pays for the goods or services." ORS 646A.295(1)(c). Thus, the Ninth Circuit's statements that the plaintiff pled an ARL violation for "charging him without first providing information on how to cancel the subscription" and failed to give consumers "instructions on how to cancel before payment" refer to violations of the California equivalent of ORS 646A.295(1)(c), an entirely different provision that is not at issue here. This case does not alter the statutory language of Oregon's ARL, which leaves no doubt that information about "how to cancel" need not be made in the initial Automatic Renewal Terms.[11]

### D. Consumers "Affirmatively Consent" to Contractual Terms By Clicking a Button Designated to Indicate Agreement to Those Terms.

Plaintiffs argue that The Times does not obtain users' "affirmative consent" to their subscription agreements when users must click a button to purchase their subscriptions that is immediately prefaced by this text: "By subscribing, you agree to the Automatic Renewal Terms on this page, our Terms of Sale and Terms of Service." Opp. at 25-26. According to Plaintiffs, clicking a button to indicate consent under these circumstances merely obtains "ordinary consent," not the "affirmative consent" required by the ARL. *Id.* at 26.

Plaintiffs cite no case law for the extraordinary proposition that an affirmative action by a consumer to indicate consent—here, clicking a "Purchase Subscription" button after being told that doing so shows your consent to certain terms—is insufficient to indicate "affirmative

---

[11] Plaintiffs' assertion that the district court in *Lopez v. Stages of Beauty* was "[f]ollowing the Ninth Circuit's lead in *Johnson*" (Opp. at 24) is patently wrong, as *Lopez* was decided seven weeks ***before*** the Ninth Circuit issued its opinion in *Johnson*. In reality, *Johnson v. Pluralsight* has been cited in only thirteen judicial opinions during the five years since it was issued, mostly to support the point that California's ARL law does not create a private right of action. No case has cited *Johnson* for the absurd proposition that Plaintiffs urge here: that a disclosure violates the ARL even where it includes each of the five "Offer Terms" in ORS 646A.293(5) because there is actually a sixth, unstated requirement—that defendants provide an explanation of how to cancel.

DEFENDANT THE NEW YORK TIMES COMPANY'S REPLY MEMORANDUM OF LAW IN SUPPORT OF MOTIONS TO DISMISS AND STRIKE

consent."[12]  That is probably because numerous cases have held precisely the opposite, both in the

ARL context and elsewhere.  *See, e.g.*, *Dohrmann v. Intuit, Inc.*, 823 F. App'x 482, 484 (9th Cir.

2020) (holding that users were bound by Terms of Service that they had to "affirmatively

acknowledge" by clicking a "Sign In" button directly above language indicating that signing in

constituted agreement, where the terms were available through "light blue hyperlinks which, if

clicked, directed the user to a new webpage"); *Gershfeld v. Teamviewer US*, Inc., No. 21-cv-00058,

2021 WL 3046775, at *4 (C.D. Cal. 2021) (in an ARL case, "Plaintiff gave his express consent at

the time of purchase by agreeing to the [End-User License Agreement] and completing the

purchase despite the bolded automatic-renewal warning on the 'Summary' page."); *Hall,* 2020 WL

2303088, at *4   ("Plaintiff affirmatively consented to the agreement containing [the automatic

renewal] terms by entering her payment information and submitting her order after receiving notice

of those terms.").[13]

---

[12] Plaintiffs argue that "[a]t best" the "disclosures in the space immediately above the 'Purchase Subscription' button" merely provide "notice" of those disclosures, not consent.  Opp. at 26-27. That would be true if a subscriber did not have to click the "Purchase Subscription" to complete an order—but they do have to click that button, and in so doing, "affirmatively" agree to the Automatic Renewal Terms, Terms of Sale, and Terms of Service.

[13] *See also Wiseley v. Amazon.com, Inc.*, 709 F. App'x 862, 864 (9th Cir. 2017) ("The notices on Amazon's checkout and account registration pages, which alerted [the plaintiff] that clicking the corresponding action button constituted agreement to the hyperlinked COU, were in sufficient proximity to give him a 'reasonable opportunity to understand' that he would be bound by additional terms."); *Maynez v. Walmart, Inc.*, 479 F. Supp. 3d 890, 898 (C.D. Cal. 2020) ("Plaintiff was provided with notice of the Terms of Use at the time of her purchase, she was informed that "[b]y clicking 'Place Order' she would be agreeing to those terms, and she then placed her order, affirmatively consenting to the Terms of Use and Arbitration Provision. . . . Whether or not Plaintiff actually saw, reviewed, or read the Terms of Use is not relevant to the question of whether she agreed to them."); *Soliman v. Subway Franchisee Adver. Fund Trust Ltd.*, 442 F. Supp. 3d 519, 526 (D. Conn. 2020) (noting that a "disclaimer explicitly required users' affirmative consent" by including this phrase above the sign-up button: "By clicking 'Sign Me Up' you agree to receive email promotions and other general email messages from Subway Group, in addition you agree to

DEFENDANT THE NEW YORK TIMES COMPANY'S REPLY MEMORANDUM OF LAW IN
SUPPORT OF MOTIONS TO DISMISS AND STRIKE

Ignoring this authority, Plaintiffs instead rely on a series of inapt cases involving "browsewrap": disclosures that appear on a website and require no affirmative conduct by a user to agree to their terms. Opp. at 27.[14] Such websites do not require a user to actively manifest assent to the relevant terms at issue. But as numerous cases—including those cited by Plaintiffs—have noted, the type of passive notice provided by browsewrap is distinct from the "sign-in wrap" (also called "hybrid wrap") that appears on The Times's Checkout Page. *See Lopez*, 331 F. Supp. 3d at 1098 ("[C]ourts have held that a hybrid between a clickwrap and browsewrap agreement is binding where the consumer is provided with an opportunity to review the terms of service in the form of a hyperlink immediately under an 'I Accept' button and then clicks that button.") (citations omitted); *Nguyen*, 763 F.3d at 1176; *see also* Opening Br. at 26-28 (collecting cases).

The California consent decrees that Plaintiffs rely upon to assert that "affirmative consent" must be obtained through a "mechanism" that "cannot relate to consent for anything other than the" Automatic Renewal Terms are likewise irrelevant. Opp. at 28. As the California Supreme Court has recognized, a consent decree is a settlement between two parties that "gives effect to a compromise that is not necessarily required by law." *Graham v. DaimlerChrysler Corp.*, 34 Cal. App. 4th 553, 577 n.7 (Cal. 2004), *as modified* (Jan. 12, 2005). Applying this law, courts have rejected the notion that the contractual bargain struck in a consent decree can be used to interpret

---

the Subway Group Privacy Statement and Terms of Use"); *Ekin v. Amazon Servs.*, LLC, 84 F. Supp. 3d 1172, 1173 (W.D. Wash. 2014) (holding that consumers were bound by terms linked on a website where they had to click an action button demonstrating their consent).

[14] *Citing Lopez v. Terra's Kitchen, LLC*, 331 F. Supp. 3d 1092, 1100 (S.D. Cal. 2018) (terms were unenforceable browsewrap "where a website makes its terms of use available via a conspicuous hyperlink on every page of the website but otherwise provides no notice to users nor prompts them to take any affirmative action to demonstrate assent"); *Nguyen v. Barnes & Noble Inc.*, 763 F.3d 1171, 1176 (9th Cir. 2014) (in a browsewrap agreement, "no affirmative action is required by the website user to agree to the terms of a contract other than his or her use of the website").

DEFENDANT THE NEW YORK TIMES COMPANY'S REPLY MEMORANDUM OF LAW IN
SUPPORT OF MOTIONS TO DISMISS AND STRIKE

a statute. *See, e.g.*, *Env't Health Advocates, Inc. v. Sream, Inc.*, 83 Cal. App. 5th 721, n.7 (1st Dist. 2022) (declining to take judicial notice of a consent judgment for the purpose of showing that statutory liability should be extended to certain conduct, noting that the court did not interpret consent judgments as setting forth legal requirements). Thus, other companies' decisions to resolve civil enforcement actions against them by adopting a standard for consent beyond that required by California's ARL simply has no bearing on the actual requirements of the ARL.[15]

Plaintiffs also attempt to distinguish *Lundbom v. Schwan's Home Service*, No. 3:18-cv-02187, 2020 WL 2736419 (D. Or. May 26, 2020), on the basis that the checkout page at issue there involved a checkbox. While true, Plaintiffs overlook that the box was ***pre-checked*** by default, meaning that users did not have to take any particular action with respect to the box to indicate their consent. *Id.* at 2. Given those circumstances, the court held that "the web-based agreement at issue most closely resembles [a] hybrid agreement" like the one at issue here. *Id.* at 4. The court then considered whether the plaintiff had taken an "affirmative act" sufficient to constitute "[e]xpress written consent," and found that she had because "chose to click 'Complete Registration.'" *Id.* at 3. The same result should follow here.

Plaintiffs also point out that *Lundbom* was not an ARL case, and context is important in ARL cases. Opp. at 29 & n.12 (citing *Sellers*, 73 Cal. App. 5th at 480-81). But the context here is that Plaintiffs were each choosing to enroll in a subscription service operated by an established

---

[15] Plaintiffs also argue that "*Turnier* recently rejected the same argument Defendant makes here." Opp. at 28 (citing *Turnier*, 517 F. Supp. 3d at 1139-40). But as shown above (pp. 14-16, *supra*), the subscription flow in *Turnier* did not contain a single Automatic Renewal Term but merely had an unadorned link to the Terms of Service. Thus, a Bed Bath and Beyond customer would not know that their subscription would automatically renew without a significant effort to sift through numerous unrelated terms.

DEFENDANT THE NEW YORK TIMES COMPANY'S REPLY MEMORANDUM OF LAW IN SUPPORT OF MOTIONS TO DISMISS AND STRIKE

news organization, where a reasonable person would expect that their subscriptions would renew because that is what new subscriptions typically do.  This is not a situation where a user has no reason to expect that they will be enrolled in a subscription plan, such as when they purchased a beauty product (as in *Lopez v. Stages of Beauty*) or sought a single answer to a particular question (as in *Sellers v. JustAnswers*).

Finally, Plaintiffs attempt to distinguish *Rutter v. Apple Inc*., No. 21-cv-04077, 2022 WL 1443336, at *6 (N.D. Cal. May 6, 2022), on the basis that the case mentions Apple iCloud's Terms and Conditions are provided to users before they subscribe.  Opp. at 29 n.13.  But from the context of that case, it appears that they are "provided" in precisely the same way as The Times's Terms of Sale and Terms of Service:  via a hyperlink presented during the subscription flow.

### E.    Plaintiffs Continue to Rely Solely on Conclusory Allegations Instead of Including the Acknowledgment Email That Was Sent to Them.

Plaintiffs offer no explanation about why they refuse to provide the follow-up emails that they allegedly received, and why then have pled no details about their contents.  Opp. At 30. Instead, they argue that their allegations are sufficient to satisfy Rule 9(b) because the Amended Complaint describes "the particular ARL violations of the Acknowledgment Email that affected Plaintiffs" and alleges that "the same deficiencies are also present in the 2020 exemplar provided."

*Id.* at 30 n.14.[16]  But as explained above, those conclusory allegations of a statutory violation do not satisfy basic federal pleading standards, let alone Rule 9(b).[17]  *See* pp. 7-8, *supra.*

### III.    PLAINTIFFS CANNOT SAVE THEIR UNJUST ENRICHMENT CLAIM.

Each of Plaintiffs' attempts to save their facially deficient unjust enrichment claim fail.

*First,* Plaintiffs argue that they do not need to identify any applicable state law for their unjust enrichment claim, and any attempt to make them do so is "premature."  Opp. At 32.  They make no attempt to address *In re ZF-TRW Airbag Control Units Prods. Liab. Litig.*, No. LAML1902905JAKFFMX, 2022 WL 522484, at *65 (C.D. Cal. Feb. 9, 2022), which dismissed an unjust enrichment claim brought on behalf of a putative class for failure to identify the applicable state law.  In any event, Plaintiffs make no argument for why they are unable to identify the state law that they are invoking for their personal claims.

*Second,* although Plaintiffs argue that The Times "overlooks" their ability to plead alternative legal theories (Opp. at 32), the Opening Brief expressly pointed out that even when pleading in the alternative, a plaintiff is not relieved from its obligation to allege "that they do not have adequate legal remedies."  Opening Br. at 31 (quoting *In re Intel Corp. CPU Mktg.*, *Sales Pracs. & Prod. Liab. Litig.*, No. 3:18-md-2828, 2021 WL 1198299, at *11 (D. Or. Mar. 29, 2021)).

---

[16]  Plaintiffs also argue that because the exemplar email is from 2020, it is "close in time to the dates of Plaintiffs' enrollments and thus is fairly representative of what Plaintiffs saw" in the emails they received.  Opp. at 30.  But the Amended Complaint does ***not*** plead that these emails are "fairly representative," and even if it did, that does not mean identical. Rule 9(b) requires that a pleading give defendants a sufficient opportunity to review the actual language of the disclosures that Plaintiffs challenge.  Moreover, as Plaintiffs' counsel well know but ignores in its Opposition, the *Moses* Complaint was filed in the interim period between the "exemplar" and Plaintiffs' subscriptions, an event that caused The Times to revise these documents.  Opening Br. at 6-8.

[17]  As to the exemplar itself, Plaintiffs' attempts to distinguish *Rutter* are unavailing.

DEFENDANT THE NEW YORK TIMES COMPANY'S REPLY MEMORANDUM OF LAW IN SUPPORT OF MOTIONS TO DISMISS AND STRIKE

Page 23

Plaintiffs do not identify any such allegation in the FAC, nor do they attempt to explain why restitution—the equitable remedy sought in their unjust enrichment claim (FAC ¶ 97)—is required here as opposed to money damages.  Instead, they now argue that they need "[a]n injunction requiring NYT to truthfully and fully disclose applicable offer terms in compliance with the ARL."  Opp. at 33.  Beyond the fact that Plaintiffs request this for the first time in their Opposition Brief, this makes no sense with respect to the two Plaintiffs in this motion, neither of whom pled that they have any intention of re-subscribing to The Times.  Plaintiffs' newfound interest in injunctive relief does not save their unjust enrichment claim.

**Third,** Plaintiffs' Opposition makes clear that their unjust enrichment claim is entirely dependent on the existence of an ARL violation, and it therefore fails for the same reason.[18]

The unjust enrichment claim is also subject to dismissal because unjust enrichment claims cannot merely duplicate other causes of action.  *See Acradyne Inc. v. Travelers Cas. & Sur. Co. of Am.*, 263 F. App'x 594, 598 (9th Cir. 2008) (applying Oregon law and granting judgment for the defendant because "[i]nsofar as Lehnert's unjust enrichment claim was simply an alternative theory for recovery based on a breach of contract, it is duplicative").  Remarkably, the very case Plaintiffs cite for the supposed injustice of The Times retaining money it received for their subscriptions (Opp. at 34) shows that where a plaintiff pursues a legal claim, "the equitable claim of unjust enrichment is no longer available."  *See Unigestion Holdings, S.A. v. UPM Tech., Inc.*, 580 F. Supp. 3d 932, 954-55 (D. Or. 2022) (granting summary judgment for defendants on this claim due to the existence of a legal claim for fraud); *see also Cordova v. FedEx Ground Package*

---

[18] Plaintiffs' argument that their subscriptions became an "unconditional gift" due to the purported ARL violations (Opp. at 33 n.16) likewise fails for the same reason.

DEFENDANT THE NEW YORK TIMES COMPANY'S REPLY MEMORANDUM OF LAW IN SUPPORT OF MOTIONS TO DISMISS AND STRIKE

*Sys.*, 104 F. Supp. 3d 1119, 1134 (D. Or. May 8, 2015) (dismissing unjust enrichment claim as duplicative where "the alleged 'injustice' here is triggered by a determination that Defendant owes Plaintiffs compensation for unlawful deductions and related penalties").

## IV.    PLAINTIFFS' NATIONWIDE CLASS ALLEGATIONS SHOULD BE STRICKEN

Plaintiffs' sole response to why their nationwide unjust enrichment claim should be stricken is that such a motion is "premature" prior to discovery.  Opp. at 34.  But Plaintiffs offer no facts that they could adduce during discovery that would change the results of the two-part analysis set forth by the Ninth Circuit in *Mazza v. Am. Honda Motor Co., Inc.*, 666 F.3d 581 (9th Cir. 2012).  Nor could they, as this analysis rests entirely on questions of law.  Plaintiffs also make no attempt to distinguish *Walters v. Vitamin Shoppe Indus.,* No. 3:14-cv-1173, 2018 WL 2424132 (D. Or. May 8, 2018), *report and rec. adopted*, 2018 WL 2418544 (D. Or. May 29, 2018)—which struck a nationwide claim for unjust enrichment at the pleading stage based on identical circumstances—or the other cases cited in the Opening Brief which hold that, at the pleading stage, it is not "premature to determine that material variations in state common law render a nationwide class unworkable as to the common law claims."  *Dearmey v. Hawaiian Isles Kona Coffee Co., LTD*, No. SACV 19-432, 2019 WL 6723413, at *3 (C.D. Cal. July 22, 2019).  Opening Br. at 34.

The Oregon cases Plaintiffs cite are inapposite, as both involved factual issues surrounding consent.  *See, e.g.*, *Mattson v. New Penn Fin., LLC*, No. 3:18-cv-00990, 2018 WL 6735088, at *2 (D. Or. Nov. 6, 2018), *report and rec. adopted*, 2019 WL 123870 (D. Or. Jan. 4, 2019)  (fact-intensive questions existed about "how or if the [plaintiff's] alleged consent was obtained, whether the other putative class members are similarly situated, or what can be ascertained from [defendant's] records without an individualized inquiry"); *Ott v. Mortg. Invs. Corp. of Ohio*, 65 F. Supp. 3d 1046, 1062 (D. Or. 2014) (fact-intensive questions existed about whether "individual

issues of consent will necessarily predominate over common issues").  In contrast, Plaintiffs have not identified a single question of fact that must be resolved to determine the facial invalidity of their nationwide class.

Otherwise, Plaintiffs largely rely on a series of cases involving statutory claims based on violations of state consumer protection laws, where courts found that questions regarding materiality prevented granting the motion to strike.  Opp. at 35 & n.17 (citing, *inter alia*, *Forcellati v. Hyland's, Inc*., 876 F. Supp. 2d 1155, 1159-60 (C.D. Cal. 2012) (declining to "speculate" about "whether the differences in various states' consumer protection laws are material in this case" where did defendants did "not even discuss the differences between the consumer protection laws of New Jersey and California, let alone address whether these differences are material based on the facts and circumstances of this case")).

Here, however, The Times identified at least three material differences between various states' law of unjust enrichment, including the fact that a common law claim for "unjust enrichment" simply does not exist in certain jurisdictions.  Opening Br. at 36-37.  Moreover, unlike the "case-by-case analysis" that the Ninth Circuit required in *Mazza* for the extraterritorial application of state consumer protection laws, the Ninth Circuit's ruling regarding unjust enrichment was "unequivocal": "unjust enrichment laws vary materially from state to state."  *Bias v. Wells Fargo & Co*., 312 F.R.D. 528, 540 (N.D. Cal. 2015) (citing *Mazza*).  Courts have consistently applied that holding to strike nationwide class claims for unjust enrichment.  Opening Br. at 34-35.  Plaintiffs cite only a single case in which a nationwide unjust enrichment claim survived the pleading stage—and the court's ruling there was based solely on the fact that the defendant's motion to strike was untimely.  *See In re Seagate Tech. LLC Litig*., No. 16-cv-00523, 2017 WL 3670779, at *3 (N.D. Cal. Aug. 25, 2017) (holding that "[b]ecause Seagate did not move

to strike until months after it answered the complaint at issue, the motion is untimely, and must be DENIED" and declining to consider the merits of defendant's argument *sua sponte*).

Thus, as in *Walters*, the nationwide class claim for unjust enrichment is facially deficient and should be stricken.  2018 WL 2424132, at *4-5.

## <u>CONCLUSION</u>

Because Plaintiffs have not and cannot plausibly allege a violation of Oregon's UTPA or a valid unjust enrichment claim, their claims should be dismissed.  As Plaintiffs have already amended their complaint once and have failed to identify anything they could add through the amendment they cursorily request, this dismissal should be with prejudice.  If Plaintiffs' unjust enrichment claim is not dismissed in its entirety, for the reasons herein and in The Times's Opening Brief, the Court should strike Plaintiffs' allegations that purport to bring this claim on behalf of a nationwide class.

Respectfully submitted 4th day of November, 2022.


FOSTER GARVEY PC

By  s/ Eryn Karpinski Hoerster
    Eryn Karpinski Hoerster, OSB #106126
    Telephone:  (503) 228-3939
    Fax:  (503) 226-0259
    E-Mail:  eryn.hoerster@foster.com

DENTONS US LLP

    Kristen C. Rodriguez, *Pro Hac Vice*
    Telephone: (202) 496-7188
    E-Mail: kristen.rodriguez@dentons.com

*Attorneys for Defendant The New York Times Company*